PEARSON, MJ

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
| NYE CAPITAL APPRECIATION PARTNERS, L.L.C., *et al.*, | ) ) ) | CASE NO.  5:08-CV-02834 |
| Plaintiffs, | ) ) | MAGISTRATE JUDGE |
| v. | ) ) | BENITA Y. PEARSON |
| JACKIE NEMCHIK, *et al.*, | ) ) | |
| Defendants. | ) ) | **MEMORANDUM OF OPINION AND ORDER** |

On December 3, 2008, Plaintiffs, Nye Capital Appreciation Partners, L.L.C., Nye

Financial Group, Inc., John B.Nye, J. Randall Nye and Eric A. Nye filed the underlying action

against Defendants Jackie Nemchik, Roy Malkin, James A. Johnson and Carole J. Johnson,

alleging various state and federal claims stemming from Plaintiffs' loss of cash infused into a

now defunct company known as ProPaint Plus Automobile Repairs, Systems & Services, Inc.

("ProPaint").[1]  Propaint was an Ohio corporation founded by Defendants Nemchik and her father

James Johnson.  ECF No. 1.

All Defendants have moved for summary judgment.  ECF Nos. 34, 39**.**  Approximately

one week after Defendant Malkin ("Malkin") filed his motion for summary judgment,

Defendants Nemchik ("Nemchik"), James Johnson, and Carole Johnson ("the Johnsons") jointly

filed a motion for summary judgment nearly identical to Malkin's.  The only independent

---

[1]  The parties have consented to the jurisdiction of the undersigned Magistrate Judge.
ECF No. 14.

(5:08-CV-02834)

drafting effort appears to be the substitution of Nemchik and the Johnsons' names for Malkins, at times, and the addition of Nemchik and the Johnsons names, at other times.  ECF Nos. 34, 39. Due to Nemchik and the Johnsons obvious reliance upon Malkins' motion, the Court will refer to Nemchik and the Johnsons' motion only when necessary.  The dispositive motions seek judgment on all counts except Count Four.

For the reasons that follow, all claims subject to summary judgment are barred by the applicable statute of limitations, and, as a result, Defendants' motions for summary judgment must be granted.  It is unnecessary for the Court to address the other arguments presented by Defendants in support of their motions.  Accordingly, Defendants' motions for summary judgment are granted and Malkin's cross and counter claims are denied as moot.

## I.  The Parties

### A.  Plaintiffs:

1.  J. Randall Nye ("Randy"): Vice President and General Counsel for Nye Financial Group, Inc. ("Nye Financial") and member of Nye Capital Appreciation Partners, L.L.C. ("Nye Capital").  ECF No. 34-1 at 3 & 11. Randy was also a member of the ProPaint Board of Directors.  ECF Nos. 34-1 at 14; 40 at 2.

2.  John B. Nye ("John"): Randy's father, President of Nye Financial and a member of Nye Capital.  ECF No. 34-4 at 6-10 (Dep. of John B. Nye).

3.  Eric A. Nye ("Eric" a.k.a. "Rick"): Randy's brother, a principal of Nye Financial and involved in Nye Capital in some capacity.  ECF No. 34-5 at 6-7.

4.  Nye Financial Group, Inc.: Through Nye Financial, each of the Nyes invested approximately $607,000.00 in ProPaint.  ECF No. 40-1 at 3 (Affidavit of J. Randall Nye, "Randy").  As stated above, each of the Nyes holds an executive position with Nye Financial.

(5:08-CV-02834)

5.     Nye Capital Appreciation Partners, LLC: The Nyes formed Nye Capital
       for the purpose of soliciting other investors to purchase shares of stock in
       ProPaint.  ECF No. 40-1 at 3.  The Nyes solicited a total of $233,000.00
       from investors and purchased stock in ProPaint via Nye Capital.  ECF No.
       40-1 at 3.

**B.  Defendants:**

6.     Jackie Nemchik: Co-Founder, Chief Executive Officer and principal
       shareholder of ProPaint.  ECF No. 34-1 at 12, 14 & 20 (Dep. of Plaintiff J.
       Randall Nye).

7.     Roy Malkin: President and Chief Operating Officer of ProPaint.  ECF No.
       34-8 at 10.

8.     James A. Johnson: Co-founder of ProPaint.  ECF No. 34-1 at 12.

9.     Carole J. Johnson: Wife of James Johnson.

Joe Carney, while not named as a party, is frequently mentioned in the relevant

documents as an attorney responsible for engineering ideas to raise capital funding for the cash-

strapped ProPaint.  Randy introduced Carney–his former associate in a law practice–to ProPaint.

ECF No. 34-1 at 12; ECF No. 34-6 at 13.  Among other things, Carney, in an effort to propel

ProPaint's fundraising efforts, prepared a Private Placement Memorandum and other offering

documents for presentation to prospective investors.  ECF No. 34-6 at 16, 19.

## II.  Procedural Background

Plaintiffs filed the underlying action in federal court on December 3, 2008.  ECF No. 1.

Prior to filing the instant Complaint, Plaintiffs had twice filed similar claims in state court.   The

first state case was filed February 21, 2002; the second was filed December 27, 2002.

Plaintiffs filed the first State case on February 21, 2002, and dismissed it without

-3-

(5:08-CV-02834)

prejudice on June 5, 2002.  ECF Nos. 1 at 3; 40 at 10.  Over six months later, Plaintiffs filed the second State case on December 27, 2002.[2]  The parties litigated the second State case for five and half years prior to moving for a stipulated dismissal without prejudice which was entered on June 5, 2008, five days before trial.[3]  The State court dismissed the second case on June 9, 2008.  Six months later, Plaintiffs filed the complaint before the Court claiming jurisdiction based on a violation of federal law pursuant to the Securities and Exchange Act of 1934, § 10(b), 15 U.S.C. § 78j(b).  ECF No. 1 at 3.

In the case before the Court, Plaintiffs allege Breach of Fiduciary Duty (Count One); Fraud (Count Two); Negligent Misrepresentation(Count Three);Conversion (Count 4); Civil Conspiracy (Count Five); Accounting (Count Six); Violation of federal and State Securities Laws (Count Seven);  Unjust Enrichment (Count Eight); Fraud (Count Nine).  ECF No. 1.

The nexus for Plaintiffs' claims is the alleged inaccurate information supplied by, and wrongful actions of, Malkin and Nemchik which allegedly induced Plaintiffs to invest money in ProPaint.  Essentially, Plaintiffs claim that, if Defendants had not provided overly optimistic income projections; withheld information about irregularities in the management of the business; and refused to disclose the impending departure of Malkin, a key employee, Plaintiffs would not have "infused" money in ProPaint.  Plaintiffs quantify their loss at an amount in excess of $800,000 and seek punitive damages in excess of $1,000,000 plus attorney's fees and costs. ECF No. 1.

---

[2]  *See* Cuyahoga County Court of Common Pleas docket Case No. CV-02-489888.

[3]  *See* Cuyahoga County Court of Common Pleas docket Case No. CV-02-489888.

(5:08-CV-02834)

In addition to myriad denials and affirmative defenses, Defendant Malkin filed cross-claims against all other Defendants and a counterclaim against all Plaintiffs, seeking "a right of contribution and/or indemnity from Plaintiffs and Defendants . . .," in the event a judgment is entered against him for an amount that "exceeds his proportionate share."  ECF No. 26 at 15, 16.

Defendants' motions for summary judgment argue that all of Plaintiffs' claims (except Count 4) involve the purchase of stock and, as such, are time-barred, and that Plaintiffs have failed to establish the essential elements of the claims.  Plaintiffs respond that genuine issues of fact exist regarding all claims (except Count 4) and, therefore, Defendants' motions should be denied.  ECF No. 40.  Neither Party addressed Count 4 (Conversion) in their pleadings.[4] Therefore, only Counts 1-3 and 5-9 are before the Court on summary judgment.

### III. <u>Facts</u>[5]

The following facts are material to the resolution of the pending motions for summary judgment but not genuinely at issue.

ProPaint, a corporation in the early stages of its development, needed cash.  Randy, John and Eric Nye (also "the Nyes") agreed to provide ProPaint with at least a portion of the needed funding.  ECF No. 40-1.  The first transfer (which may have been made in "installments") of funds from the Nyes to ProPaint occurred "sometime in 1997 through the Fall of 1998" and

---

[4]  The Court Ordered the parties to address Count 4, if applicable.  ECF No. 43.  Only Defendant Malkin responded; he indicated he did not address Count 4 in his motion for summary judgment because it is not directed against him.  ECF No. 44.

[5]  Unless otherwise stated, the facts as present have been taken from the Complaint, Plaintiffs' Opposition and undisputed evidence submitted by the parties.  When evidence is in dispute, the facts have been viewed in the light most favorable to Plaintiffs, the non-moving party.

(5:08-CV-02834)

resulted in $607,000 being transferred to ProPaint in the name of Nye Financial Group, Inc. and was categorized as a loan.  ECF No. 40-1 at ¶ 5.  The second transfer from the Nyes occurred in October 1998 and resulted in $233,000 being transferred to ProPaint in the name of Nye Capital Appreciation Partners, L.L.C. and was categorized as investment in equities or a  "Capital Infusion."[6]  ECF No. 40-1 at ¶ 9.  The Nyes, ultimately, expected reimbursement of both transfers, a total of approximately $800,000.

The crux of the matter–the material issue in genuine dispute–is whether the $800,000 involves the sale or purchase of securities.  The primary basis for Defendants' motions for summary judgment is that the entire $800,000( *i.e.* $607,000 plus $233,000)[7] "involves the sale of securities and, as such, all of Plaintiffs' claims are barred by the two-year statute of limitations contained in Ohio Revised Code § 1707.43."  ECF No.  34 at 2.  Plaintiffs counter that the $607,000 transfer was a *loan* not intertwined with the purchase or sale of securities and, therefore, the two-year statute of limitations contained in Ohio Revised Code § 1707.43 statute of limitations does not apply.

The balance of the facts, while largely undisputed, are not material to the dispositive issues on summary judgment: whether the claims stem from the purchase or sale of securities and, if so, whether they are time-barred.

_____

[6] When deposed, Randy Nye testified that Nye Capital was formed to "create an investment partnership to negotiate an investment in ProPaint."  ECF No. 34-1 at 7.

[7] Randy states in his affidavit that the Nyes planned to invest $840,000.00 in ProPaint while letters sent to Nemchik describing the investment plan state the Nyes would invest $800,000.00.  *Compare* ECF No. 40-1 at 2 *with* ECF No. 34-13 at 1.  The difference in the amounts is not material to the Court's analysis.

(5:08-CV-02834)

### III.  **Summary Judgment Standard**

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.  "The moving party has the initial burden of proving that no genuine issue of material fact exists." *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 710 (6th Cir.2001) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir.1989)), and the court must draw all reasonable inferences in the light most favorable to the nonmoving party. *Id.* (citing *City Mgmt. Corp. v. U.S. Chemical Co.*, 43 F.3d 244, 250 (6th Cir.1994)); Rule 56(c).  The adverse party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

To this end, Rule 56 requires the nonmoving party who has the burden of proof at trial to oppose a properly made summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves[.]"  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  General averments or conclusory allegations of an affidavit do not create specific fact disputes for summary judgment purposes.  *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).  Nor may a party "create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts . . . earlier deposition testimony." *Reid v. Sears Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986) (*citing Biechell v. Cedar Point, Inc.*, 747 F.2d 209, 215 (6th Cir. 1984)); *but see Baer v. Chase*, 392 F.3d 609, 623-26 (3d Cir. 2004) (noting that a so-called "sham" affidavit need not be disregarded if there is "independent evidence in the record to bolster [the] otherwise questionable affidavit").

(5:08-CV-02834)

Further, "'[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" *Street*, 886 F.2d at 1477 (quoting *Anderson*, 477 U.S. at 252).

In sum, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.  More simply put, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see Matsushita Elec. Indus. Co. V. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("where the record taken as a whole could lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.").

## IV.  Analysis

### A.  The $600,000 "Loan" is a Security

#### 1.  Undisputed Facts Demonstrate that the Nye's Loan Was Intended as an Investment

Plaintiffs unsuccessfully attempt to distinguish the $607,000 invested through Nye Financial by Randy, John and Eric as "loans" from the purchase of securities.  ECF No. 40 at 8-9.  The documentation submitted in support of and in opposition to the motions for summary judgment supports the view that, although the $607,000 was initially described as a "loan" it was always intended as an "investment," that is equity rather than debt.  Randy Nye's affidavit submitted in opposition sets the stage for this understanding.  He acknowledges that he and his

(5:08-CV-02834)

family members "began investing funds in ProPaint some time in 1997." ECF No. 40 at ¶ 3, 2.

Later, in the same affidavit, Randy describes the Nyes' initial investment as a "loans of

$607,000."[8]  When viewed in the light most favorable to Plaintiffs, this may have been a

technically correct descriptor of the transfer comprising the $607,000.  But, as the documentation

shows, the Nyes fully understood that the *loans* were intended to be converted into equity or

shares of stock in ProPaint.  Stated differently, the loan of $607,000 was a conduit for providing

ProPaint cash in exchange for a repayment in stock.[9]

A memorandum from Carney to Randy Nye and others explains that the "loans" were

simply the first step in creating an infusion of equity.  Carney blatantly wrote "If ProPaint were

flush with funds, *we could skip the loan step* and proceed directly to the investment." ECF No.

42-4 at 1 (emphasis added).  Latter in the memorandum, after detailing how the loans could be

converted into equity shares, Carney clarifies "[w]ith *this format*, there is no need for a loan

agreement or option . . . *Obviously, it is the equity, not debt*, which helps the ProPaint balance

sheet, so the sooner we get the equity issued the better for ProPaint." ECF No. 42-4 at 7

(emphasis added).  Randy, in obvious agreement with Carney's explanation, forecasts it in a

---

[8] The Court is free to disregard self-serving attempts to create sham issues of fact.
Similarly, "[a] motion for summary judgment may not be defeated by factual assertions in the
brief of the party opposing it, since documents of this nature are self-serving and are not
probative of evidence of the existence or nonexistence of any factual issues." *Garvey v.
Montgomery*, 128 Fed.Appx 453, 453 n.6 (6th Cir. 2005) (quoting *Banks v. Rockwell Int'l N. Am.
Aircraft Opertations*, 855 F.2d 324, 325 n.1 (6th Cir. 1988)).

[9] *See* ECF No. 42-8 at 2 (showing a chart of "ProPaint Plus Cash Requirements" and
reflecting "Nye Group" as a "cash source" for $900,000).

(5:08-CV-02834)

letter to Nemchik dated March 30, 1998.[10]  ECF No. 42-3.

Based upon this documentary evidence, Plaintiffs' persistence in categorizing the $607,000 as a loan is belied by Plaintiff's expectation of being repaid *via* the acquisition of ProPaint stock.  ECF Nos. 34-1 at 23; 34-13 at 1; 42-5 at 2.

### 2.  The Law Supports Categorization of the Loan as Securities

In addition to the factual evidence that the $607,000 loan is a security, Defendants directed the Court to the"family resemblance" test established by the Supreme Court for determining whether certain notes qualify as securities.  *Reves v. Ernst & Young*, 494 U.S. 56, 63-66 (1990).  In *Reves*, the Court made known that every note is initially presumed to qualify as a security.  *Id*. at 65-67.  The presumption that all notes are securities can only be overcome in one of two ways: (1) the note must bear a strong resemblance to the judicially created categories of non-securities;[11] or (2) after considering the four *Reves* factors, the note must have

---

[10]  Interestingly, Plaintiffs claim to have proof that the $600,000 was a loan but did not submit that proof because Defendants have not alleged that "Plaintiffs cannot prove damages." ECF No. 40 at 13.  Defendants obvious challenge to the categorization of the $607,000 as a loan should have, at least in the eyes of the Court, invited the presentation of such contradicting evidence should it exist.

[11] According to the Supreme Court, the notes deemed non-securities include:

[T]he note delivered in consumer financing, the note secured by a mortgage on a home, the short-term note secured by a lien on a small business or some of its assets, the note evidencing a 'character' loan to a bank customer, short-term notes secured by an assignment of accounts receivable, [] a note which simply formalizes an open-account debt incurred in the ordinary course of business (particularly if, as in the case of the customer of a broker, it is collateralized) [,and] . . . notes evidencing loans by commercial banks for current operations.

*Reves*, 494 U.S. at 65 (quotations omitted).

-10-

(5:08-CV-02834)

characteristics that weigh in favor of adding the note as a new category to the enumerated list of non-securities.  *Id*.

The four factors used for determining whether an item should or should not be added to the enumerated list of non-securities are as follows: (1) "the motivations that would prompt a reasonable seller and buyer to enter into [the transaction]," (2) "the 'plan of distribution' of the instrument," (3) "the reasonable expectations of the investing public," and (4) "whether some factor such as the existence of another regulatory scheme significantly reduces the risk of the instrument, thereby rendering application of the Securities Acts unnecessary." *Id*. at 66-67.

In *Reves*, the Supreme Court failed to articulate the method for applying the four factors. *See LeBrun v. Kuswa*, 24 F.Supp.2d 641, 646 (E.D. Louisiana 1998) ("The language is ambiguous as to whether all four factors must be met, or whether a balancing approach should be utilized.  While this Court concludes that a balancing approach is most suitable, the relative weight to be assigned to each factor remains unclear.").  The *Reves* Court explained that the evaluating court's approach should be grounded in "economic reality rather than on a set of *per se* rules," thus awarding "courts sufficient flexibility . . . ." 494 U.S. at 63.

The Supreme Court explained in *Reves* that the first factor suggested that the notes were securities because "[the issuer] sold the notes in an effort to raise capital for its general business operations, and purchasers bought them in order to earn a profit in the form of interest." *Bass v. Janney Montgomery Scott, Inc.*, 210 F.3d 577, 593 (6th Cir. 2000) (citing *Reves*, 494 U.S. at 67-68).  Moreover, in *Reves*, the Farmers Co-Op sold the notes with the intention to raise capital for its business operations, while purchasers bought the notes with the intention to earn a profit in

(5:08-CV-02834)

the form of interest.  *Reves*, 494 U.S. at 66.  The Court viewed the transaction by both sides as "an investment in a business enterprise rather than as purely commercial or consumer transaction," ultimately finding that the first factor weighed in favor of a "security."  *Id*.

Similar to the parties in *Reves*, both Plaintiffs and Defendants in this case were motivated by investment considerations: Defendants used the loan for its business operations, and Plaintiffs issued the loan in exchange for stock with the intention to ear a profit.[12]  ECF No. 42.

The second factor requires an examination of the plan of distribution.  This factor suggests that the notes are securities if they are offered and sold to a broad segment of the public, or if the notes are instruments that are commonly traded for speculation or investment.  *Id*.  At first glance, this factor weighs against the note qualifying as a security "because the note was not commonly traded and was a private agreement between two sophisticated entities."  ECF No. 42 at 5.  However, "[t]he fact that there was no public distribution is not fatal to [plaintiff's] securities law claims.  A debt instrument may be distributed to but one investor, yet still be a security . . . Any other interpretation of *Reves* would contradict Congress' intent to enact a definition of 'security' sufficiently broad to encompass virtually any instrument that might be sold as an investment."  *Id*. (citing *National Bank of Yugoslavia v. Drexel Burnham Lambert, Inc*., 768 F.Supp 1010, 1015-16 (S.D.N.Y. 1991)); *see also Stoiber v. Securities of Exchange Commission*, 161 F.3d 745, 752 (D.C. Cir. 1998) ("Admittedly the plan of distribution in part

---

[12] *See Reves*, 494 U.S. at 68 n.4 ("We emphasize that by 'profit' in the context of notes, we mean 'a valuable return on investment,' which undoubtedly includes interest."  Profit with regard to notes means more than "capital appreciation" or "a participation in earnings," but includes interest").

-12-

(5:08-CV-02834)

signals that the notes might not be securities, but that factor by itself is not dispositive.").

It is axiomatic that Private Placement Memorandums ("PPM") are used to market risky investments to sophisticated investors.  ECF No. 34-8.  The PPM used to generate equity interest in ProPaint disavowed any reasonable expectation of return.  Thus, second factor has been satisfied.

The third *Reves* factor "is an objective test that turns on whether a reasonable purchaser would have perceived the notes to be an investment."  *Bass*, 210 F.3d at 593 (citing *Reves*, 494 U.S. at 68-69) (explaining the court will consider instruments to be securities based on public expectations, even if an economic analysis suggests that the instruments are not securities as used in that transaction).

The memorandum referenced above and Randy's letter to Nemchik remove all doubt – Plaintiffs, the Nyes, expected the $607,000 to be converted to equity.  ECF No. 42-4. Additionally, in an email, Randy stated: "John, Rick and I have made a commitment to provide ProPaint with a cash infusion of $800,00 for 40% of the company on a fully diluted basis."  ECF No. 42-1.  Eric Nye is also known as Rick.  ECF No. 34-5 at 46.

The fourth factor is an assessment of whether there is a risk-reducing factor suggesting that the instruments were not securities.  *Reves*, 494 U.S. at 69-70.  The Supreme Court noted that the fourth factor weighs in favor of "uncollateralized and uninsured" notes being securities because the notes "would escape federal regulation entirely if the [1933 and 1934] Acts were held not to apply."  *Id*.  Additionally, several circuit courts have "interpreted the Supreme Court's analysis of the fourth factor in *Reves* to emphasize whether there is a risk-reducing factor

-13-

(5:08-CV-02834)

such as another regulatory scheme that reduces the risk of the investment."[13] *Bass*, 210 F.3d at

594 (citing *Stoiber*, 161 F.3d at 751).

ProPaint's PPM assures investors that risk *is* inherent. It states: "There can be no

assurance that [Propaint's] operations will not be subject to more restrictive regulation or

increased taxation by federal, state or local agencies in the future which may adversely affect the

Company's operations and potential profitablitity." Additionally, Defendants aptly argue

"Plaintiffs were not protected by any other regulatory scheme and the notes were

uncollateralized and uninsured." ECF No. 42. Therefore, the fourth factor is met, as Defendants

have not shown that another regulatory scheme exists to reduce the risk of investment.

An examination and balance of the four factors does not indicate that the $607,000 loan

should be added to the enumerated list of non-securities. Having considered the facts and

applying the appropriate standard of review, the loan is a "security" under the *Reves* test.[14]

**B. The Entire $800,000 is Inextricably Intertwined with the Sale of Securities**

Defendants argue that each of the claims "involve or arise out of the sale of securities"

---

[13] The risk factor, however, cannot be viewed as dispositive "because there exists other commercial transactions that are not meant to be regulated under the securities laws which may be just as risk." *LeBrun*, 24 F.Supp.2d at 649.

[14] O.R.C. § 1707.01 defines "Security" as, among other things, "any oral, written, or electronic agreement, understanding, or opportunity, that represents title to or interest in . . . or charge upon, the capital, assets, profits, property, or credit of any person or of any public or governmental body, subdivision, or agency. It includes shares of stock, certificates for shares of stock . . . membership interests in limited liability companies . . . promissory notes, . . . evidences of indebtedness . . ."

-14-

(5:08-CV-02834)

thus rendering them time-barred  ECF No. 34 at 13.  Plaintiffs merely responded that, "nothing

in the record shows that the transactions in question are all 'sales of securities' transactions;

either in whole or in part . .." is insufficient to successfully oppose Defendant's charge.  ECF No.

40 at 7.  Contrary to Plaintiffs' opinion, Defendants motions are supported by documents,

including depositions, affidavits, and correspondence, in addition to pertinent federal and Ohio

case law.[15]      The Supreme Court of Ohio directs that "in determining which limitations period

will apply, courts must look to the actual nature or subject matter of the case, rather than the

form in which the action is pleaded. The grounds for bringing the action are determinative

factors, the form is immaterial."  *Doe v. First United Methodist Church*, 68 Ohio St.3d 531, 536

(1994); *see also Lawyer's Coop. Pub. Co. v. Muething, 65 Ohio St.3d 273, 603 N.E.2d 969, 973

(Ohio 1992)* (same).  Ohio Revised Code § 1.51 states that, except in circumstances not

applicable in this case, where a general statute of limitations provision conflicts with a special or

local provision, the special or local provision prevails as an exception to the general provision.

Based upon this legal guidance, the two-year statute of limitations applicable to claims arising

out of a sale or contract for sale made in violation of the Ohio securities laws provided by

O.R.C. § 1707.43(B) prevails over the general statutes of limitation for individual claims of

breach of fiduciary duty, fraud and negligent misrepresentation.[16]

_____

[15]To the extent possible, the Court has relied more heavily upon documentary evidence submitted by Plaintiffs.

[16]  Ohio law weighs heavily toward a finding that common law claims which are predicated on or inextricably interwoven with the sale of securities or the contracts related to securities sales are governed by the statute of limitations in O.R.C. § 1707.43(B). *See, e.g.*, *Helman v. EPL Prolong, Inc., 139 Ohio App.3d 231, 243-44, 743 N.E.2d 484 (2000)*; *Ware v. Kowars, 2001 WL 58731, *4-6 (Franklin Cty. Jan. 25, 2001)*; *Kondrat v. Morris, 118 Ohio*

(5:08-CV-02834)

A single universe of facts support both Plaintiffs common law and securities law claims (Count 7).  The allegations hinge on the alleged malfeasance of Malkin and Nemchik that unlawfully induced Plaintiffs to transfer money to ProPaint.  ECF No. 1.

An actual sale is not necessary to trigger the statute of limitations in O.R.C. § 1707.43(B).  *See Wyser-Pratte Mgmt. Co., Inc.*, 413 F.3d at 561 (holding issued by the Sixth Circuit stating that "Ohio law is clear that . . . [when] fraud claims arise out of or are predicated on the sale of securities, they are governed by the specific statute of limitations set forth in Ohio Rev.Code § 1707.43(B)").  Although it is not clear whether Plaintiffs ultimately acquired shares in ProPaint as anticipated, it is clear that (1) no actual sale of securities is necessary to trigger the statute of limitations in O.R.C. § 1707.43; and (2) Plaintiffs attempt to buy securities in ProPaint in exchange for the entire $800,000.

Plaintiffs planned and executed an agreement with Nemchik describing the terms, amounts and timing of the investments to be made in ProPaint.  ECF No. 34-13.  Plaintiffs then created the entity Nye Capital to facilitate channeling funds into ProPaint in exchange for 40% of ProPaint stock, allocating 25% to themselves for guaranteeing the funds and making their original capital infusion.  ECF Nos. 42-1; 42-2; 42-5; 42-9.  Plaintiffs orchestrated the plan for investing and owning stock in ProPaint, supplied ProPaint with money for the continued operations of ProPaint, and recruited other investors to cover their original investment under the belief that they were going to receive a percentage of ProPaint stock in return for their original

_____

App.3d 198, 205, 692 N.E.2d 246 (1997); *Hater v. Gradison Div. Of McDonald and Co. Securities*, 101 Ohio App.3d 99, 113, 655 N.E.2d 189 (1995); *see also Wuliger v. Anstaett*, 363 F.Supp.2d 917, 934 (N.D. Ohio 2005).

(5:08-CV-02834)

investment.

### B. **Plaintiffs' Claims are Time-barred**

Having determined that the claims at issue are related to the sale of securities, the Court now reviews the appropriate statute of limitations.

In their opposition, Plaintiffs acknowledge that a "one year statute of limitations is applicable to [] federal [securities law violations] and a two year limitations period is applicable to the Ohio statute." ECF No. No. 40 at 23.  Therefore, no dispute exists among the parties as to the appropriate limitations period applicable under the applicable federal or state statute of limitations for securities law violations.  As important, Plaintiffs concede that their initial State complaint was not filed within the longer (two-year) statute of limitations relative to at least one Plaintiff -- Randy– who knew of the "transgressions now in controversy" in "December 1998 to January or February, 1999." ECF No. No. 40 at 23.  They persist in arguing, however, that Defendants have failed to "submit any evidentiary materials or argument that the balance of the Plaintiffs, other than Randy, either knew or had any reason to know of the deficiencies not complained of in early 1999."[17]  ECF No. 40 at 23.  The Court disagrees.

### 1. **Federal Statute of Limitations**

Plaintiffs allege federal question jurisdiction stemming from  "a violation of . . . the Securities Exchange Act of 1934 § 10(b), 15 U.S.C.A. § 78j(b), and regulations promulgated there under[sic]." ECF No. 1 at 3.  Beyond this mention in the eighth paragraph of the

---

[17]  Plaintiffs contradict this argument earlier in their opposition by stating "In the case at bar, Defendants state that the actual knowledge of all the facts giving rise to the Plaintiffs' claim is no later than December 1998." ECF No. No. 40 at 10.

-17-

(5:08-CV-02834)

Complaint, there is no further reference to the federal law allegedly violated by Defendants. This omission holds true for all allegations including Count 7, the alleged federal (and state) securities claim. Regardless of the Complaint's ambiguity, it is clear that Plaintiffs have "agree[d] that a one year limitations period is applicable to [th]e federal statute . . . ." ECF No. 40 at 23. This concession, however, is incomplete.

"Litigation instituted pursuant to § 10(b) and Rule 10b-5 therefore must be commenced within one year after the discovery of the facts constituting the violation *and* within three years after such violation." *Lampf v. Gilberson*, 501 U.S. 350, 364 (1991) (emphasis added). Plaintiffs first filed this case on February 21, 2002. ECF No. 40 at 10. Thus, according to the United States Supreme Court in *Lampf*, any federal securities claims that arose before February 21, 1999, are barred by the three-year repose period set forth in the 1934 Securities Exchange Act. The last monies invested in ProPaint by any Plaintiff occurred in October 1998, *i.e.*, the last alleged violation. ECF No. 34-1 at 23. Plaintiffs' federal securities claim arose before February 21, 1999, and therefore, the federal securities claim and those claims reliant upon it were not timely filed and, as a result, are time-barred.

### 2. Ohio's Statute of Limitations

Similar to the manner in which Plaintiffs pleaded the federal securities claim, the state securities claim is presented without any accompanying law stated anywhere in the Complaint. Plaintiffs merely assert, "The foregoing actions constitute violations of federal and state securities laws . . . ." ECF No. 1 at 11. Again, however, Plaintiffs "agree[d] that a . . . two year limitations period is applicable to the Ohio statute." ECF No. 40 at 23. On this account of the

(5:08-CV-02834)

law, Plaintiffs are correct.

Under Ohio law, all claims brought prior to September 16, 2003, and arising from the sale of securities are subject to the two-year statute of limitations found in O.R.C. § 1707.43(B) which provides:

> No action for the recovery of the purchase price as provided for in this section, and no other action for any recovery based upon or arising out of a sale or contract for sale made in violation of Chapter 1707 of the Revised Code, shall be brought more than two years after the *plaintiff knew, or had reason to know*, of the facts by reason of which the actions of the person or director were unlawful, or more than four years from the date of such sale or contract for sale, whichever is the shorter period.

O.R.C. § 1707.43(B) (2002) (emphasis added).  Therefore, any claims that Plaintiffs knew, or had reason to know, of the facts alleged in the Complaint before February 21, 2000, are barred by the statute of limitations set forth in O.R.C. § 1707.43(B).  The question of when Plaintiffs knew or had reason to know that Defendants had engaged in the alleged wrongful acts is a question of fact not genuinely at issue based upon the record before the Court.

Plaintiffs mistakenly contend that "Defendants have totally failed to submit any evidentiary materials or even arguments that the balance of the Plaintiffs, other than Randy, either knew or had any reason to know of the deficiencies now complained of in early 1999." ECF No. 40 at 23.  Contrary to Plaintiffs' contentions, however, Defendants have submitted a substantial amount of evidence, including depositions of each Plaintiff, in support of their motions.[18]  *See* ECF No. 34 and accompanying attachments.  In particular, Defendants attached a

---

[18]  By comparison, Plaintiffs' submitted an affidavit from Randy, draft resolutions of ProPaint's Board of Directors and a letter from an investor in Nye Capital, in support of their position.  ECF Nos. 40-1 & 40-2.  General averments or conclusory allegations of an affidavit do not create specific fact disputes for summary judgment purposes.  *See Lujan v. National Wildlife*

-19-

(5:08-CV-02834)

memorandum dated March 15, 1999, that is addressed to the "Investors in Nye Capital

Appreciation Partners I, LLC (NCAP)" from "J. Randall Nye [Randy], John B. Nye, Jr., Eric A.

Nye." ECF No. 34-20.  The fourth paragraph reads as follows:

> With respect to the issues at hand, sufficient information has been gleaned as a result of Randy's immersion in the day to day activities of ProPaint to infer that the information provided by management (including Mr. Malkin) to prospective investors was either misleading or omitted information that was required to be disclosed.  As a result Randy will be interviewing counsel on behalf of NCAP to pursue any available remedies.

ECF No. 34-20.  Even when viewed in the light most favorable to Plaintiffs, this communication

demonstrates that Randy, John, and Eric *had reason to know of* Defendants' alleged wrongful

acts no later than March 15, 1999.[19]  Accordingly, because Randy, John, and Eric Nye were

directors and officers of Nye Financial and Nye Capital, it is reasonable to infer that each

Plaintiff knew of or had reason to know of Defendants' alleged wrongful acts no later than

March 15, 1999–over two years before the filing of the first Complaint on February 21, 2002.

As important, the two-year statute of limitations had well passed and was enjoying a deep

slumber by the 2008 filing of the instant action.

The "discovery rule" that tolls the running of a statute of limitations can be triggered

_____

*Federation*, 497 U.S. 871, 888-89 (1990).

[19]  It is also arguable that John and Eric knew or at least had reason to know of Defendants' alleged wrongful acts upon Malkin's resignation, Randy's appointment and subsequent resignation as Chairman of the Board of Directors for ProPaint or ProPaint's bankruptcy filing, individually or collectively.  *See Wyser-Pratte Mgmt. Co., Inc., v. Telxon Corp.*, 413 F.3d 553, 561-63 (6th Cir. 2005) (discussing the inquiry notice standard and that "knowledge of suspicious facts" or "storm warnings" trigger the duty to investigate).  All of these events or "storm warnings" occurred from November 1998 to April 1999, rendering the state securities claims time-barred by application of the inquiry notice standard.

-20-

(5:08-CV-02834)

before a Plaintiff realizes he has a claim against a defendant.  Ohio's application of the discovery rule, including that applicable to the statutory language set forth in O.R.C. § 1707.43(B) starts the running of the statute of limitations when the plaintiff knew or should have known of the defendant's wrongdoing.  Ohio courts are nearly unanimous in their agreement that, once alerted, plaintiffs have a duty to "inquire into the matter with due diligence."  *See e.g., Au Rustproofing Center, Inc. V. Gulf Oil Corp., 755 F.2d 1231, 1237 (6th Cir.1985)* ("Information sufficient to alert a reasonable person to the possibility of wrongdoing gives rise to a party's duty to inquire into the matter with due diligence.").

Thus, the claims interwoven with the state securities claim are time-barred.

### V.  Plaintiffs Withdrawals and Modification

Embedded in their opposition, Plaintiffs seek to withdraw Counts 5, 6 and 8 as to all Defendants, presumably.  Suffice it to say that the Complaint is not a model of clarity.  Plaintiffs do not specify against whom the allegations in Counts 5, 6, and 8 are directed or, in their opposition, withdrawn.  Also in their opposition, Plaintiffs seek to modify Count 7 (federal and state securities claims) by acknowledging that it is time-barred as to Defendant Randy only. ECF No. 40 at 21, 24.  The withdrawals are futile at this point because, for the reasons provided herein, Counts 5, 6 and 8 are time-barred and dismissed as such pursuant to this Order. To the extent Plaintiffs withdrawal or modification is meaningful in possible future ligation, the Court permits both the withdrawal and the modification and Orders that, in the alternative to the ruling herein, Counts 5, 6, and 8 are withdrawn with prejudice.

### VI.  Conclusion

(5:08-CV-02834)

For the reasons provided above, the Court finds that Counts 1-3 and 5-9 are intertwined with the sale of securities and, as such, each was filed after the statute of limitations had expired. Accordingly, Defendants' Motions for Summary Judgment are granted (ECF Nos. 34 & 39) and Counts 1-3 and 5-9 are dismissed.  Defendant Malkin's Counterclaim and Cross Claim  (ECF No. 26) are denied as moot.  This case shall proceed solely on Count 4 against Defendant Nemchik.

To the extent Plaintiffs withdrawals or modification is meaningful in possible future ligation, the Court permits the withdrawals and the modification and Orders that, in the alternative to the ruling herein, Counts 5, 6, and 8 are withdrawn with prejudice and Count 7 exists on behalf of all Plaintiffs except J. Randall "Randy" Nye.

IT IS SO ORDERED.


 September 29, 2010                                    s/ Benita Y. Pearson
Date                                               United States Magistrate Judge

-22-